**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ALAN J. SCHNEIDER         *

                                   *

                                   *

       v.                         *             Civil No. JFM-16-2843

                                   *

                                   *

DONALDSON FUNERAL HOME, P.A.,      *

*et al.*                                  *

                           ********

## MEMORANDUM

Plaintiff Alan J. Schneider ("Schneider") brings this lawsuit against defendants Donaldson Funeral Home, P.A., Donaldson Properties No. 3 LLC, Dewitt Jay Donaldson (collectively "Donaldson"), and Howard County, Maryland ("the County"), seeking declaratory and injunctive relief and the imposition of civil penalties under the Federal Water Pollution Control Act ("the Act" or "CWA").  Schneider asserts multiple violations of the CWA relating to Donaldson's construction of a funeral home and mortuary on a parcel of land near Schneider's residential property and abutting a state waterway.  Now pending is Schneider's motion for temporary restraining order ("TRO") and preliminary injunctive relief, (ECF No. 12), Donaldson's motion to dismiss (ECF No. 14), and the County's motion to dismiss, (ECF No. 10).  The motions are fully briefed and no oral argument is necessary.  *See* Local R. 105.6.  For the reasons set forth below, Schneider's motion for temporary restraining order and preliminary injunctive relief is denied, and both Donaldson's and the County's motions to dismiss are granted.

## BACKGROUND

This dispute arises out of Donaldson's construction of a funeral home and mortuary in Howard County, Maryland.  Plaintiff lives on a residential property at 12598 Clarksville Pike in

Clarksville, Maryland, near defendant Donaldson's construction site.  (ECF No. 1 ¶¶ 49–50).

Donaldson's property is intersected on the northwest corner by a small waterway ("the

Tributary") that flows parallel to the back property line and downstream towards Schneider's

residential lot and alongside his property line.  (*Id*. ¶¶ 50–51).  Schneider derives aesthetic

benefit from the Tributary bordering his residential property and he "regularly enjoy[s] the

natural environment behind [his] home."  (*Id*. at Ex. 5, p. 2).  The Tributary eventually flows into

Carrolls Branch I, a slightly larger waterway that has been designated, along with its tributary

streams, as a "Tier II" waterway by the Maryland Department of the Environment ("MDE").  (*Id*.

¶¶ 51–52).  MDE designates certain bodies of water as Tier II when "the water quality . . . is

better than that required by water quality standards to support the existing and designated uses."

MD. CODE REGS. 26.08.02.04-1(C) (2016).  Carrolls Branch I has been designated for use as

Recreational Trout Waters and Public Water Supplies.  (ECF No. 1 ¶ 53).

In January of 2010, Donaldson proposed the construction of a funeral home and mortuary

on a parcel of residential property in Clarksville, Maryland located upstream from Schneider's

residence.  (*Id.* ¶ 47).  Despite the efforts of Schneider and other local residents to oppose

Donaldson's development plan, the County's Board of Appeals ("the Board") granted Donaldson

a conditional use permit to build the proposed mortuary in July 2013.  (*Id*. ¶ 61).  The Board's

approval was conditioned on Donaldson's adherence to the Amended Conditional Use Plan the

defendant submitted to the Board in August 2012.  (*Id*. ¶ 62, Ex. 8, p. 2).  The Amended

Conditional Use Plan did not identify any wetlands on the site, and an expert hired by Donaldson

to testify at the Board hearing stated that he did not find any wetlands when inspecting the

property.  (*Id*. ¶ 63, 65, Ex. 13, Ex.14, p. 13).  According to Schneider, Donaldson never

submitted a "Social and Economic Justification" ("SEJ") for the building project.  (*Id*. ¶ 66).

The Board, Schneider claims, is required to request an SEJ from a permit applicant prior to allowing the discharge of material into a Tier II waterway, and the Board must consider the SEJ before approving a construction permit.  (*Id*.).

In August of 2015, MDE visited the Donaldson site and observed the presence of jurisdictional wetlands.  (*Id*. ¶ 63).  In response, Donaldson updated his building site plan to include the wetlands and submitted the revised plan to the County's Department of Planning and Zoning ("DPZ") for permit consideration in October 2015.  (*Id*. ¶ 67).  In November, Schneider and other local citizens informed DPZ that Donaldson was required to apply for coverage under MDE's General Permit for Stormwater Associated with Construction Activity ("GCP") before commencing construction on the property.  (*Id*. ¶ 72–73).  Schneider also told the County that an antidegradation review was required prior to granting a construction permit.  (*Id*. ¶ 71).  According to Schneider, Donaldson began clearing vegetation and moving heavy equipment on the property on March 26, 2016.  (*Id*. ¶ 74).  On April 4, 2016, DPZ officially issued Donaldson a "Commercial New Building Permit."  (*Id*. ¶ 68).  The County, Schneider claims, never conducted any kind of antidegradation review, and Donaldson did not receive coverage under the state GCP before his building permit was approved by DPZ.  (*see Id*. ¶ 68–74).  Donaldson applied for coverage under the GCP no earlier than April 4, 2016.  (*Id*. ¶ 75).  Schneider alleges Donaldson's GCP application included outdated information about the property and that Donaldson did not include a no-discharge alternative analysis or an SEJ as required to satisfy Maryland's Tier II Antidegradation Review requirements.  (*Id*. ¶ 77).  Plaintiff claims that Donaldson's construction of the funeral home and mortuary is causing the unlawful discharge of materials into the Tributary.  (*See id.* ¶¶ 85–105).

Schneider sent a Notice of Intent to Sue (NOI) under Section 505 of the CWA to the County and to Donaldson on April 6, 2016, and he mailed copies of the NOI to the Administrator of the EPA, the Maryland Secretary of the Environment, and the Regional Adminsitrator for the EPA Region 3.  (*Id*. ¶ 79).  All intended recipients received copies of the NOI between April 7 and April 11, 2016.  (*Id*. ¶ 80).  Schneider filed a complaint in this court on August, 12 2016.  The complaint asserts three claims against Donaldson under the CWA: discharge of pollutants without an authorizing permit under Section 402 (Count I), discharge of dredge or fill material to jurisdictional waters without an authorizing permit under Section 404 (Count II), and failure to conduct an antidegradation review (Count III).  The complaint also brings one claim against the County under the CWA for failure to conduct an antidegradation review (Count IV).  On September 9, 2016, Schneider filed a motion for a TRO and preliminary injunctive relief.  (ECF No. 12).  The County filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on September 9, 2016.  (ECF No. 10).  Defendant Donaldson filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) on September 13, 2016, seeking dismissal of all three counts.  (ECF No. 14).

## STANDARD

Schneider moves for a TRO and preliminary injunction against both Donaldson and the County.  In order to demonstrate the appropriateness of a TRO or a preliminary injunction, the plaintiff must establish "(1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  Preliminary injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion."

4

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M.

Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995)).

Donaldson and the County move to dismiss Schneider's claim under Federal Rule of

Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Federal courts maintain subject

matter jurisdiction only over actual "cases or controversies," U.S. Const. art. III, § 2, and the

doctrine of standing is a critical aspect of this constitutional requirement.  *Marshall v. Meadows,*

105 F.3d 904, 906 (4th Cir.1997); *see also Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)

(citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454

U.S. 464, 471–76 (1982)) ("Article III gives federal courts jurisdiction only over 'cases and

controversies,' . . . and the doctrine of standing identifies disputes appropriate for judicial

resolution.").  In order to establish standing, a plaintiff must demonstrate: 1) he has suffered an

"injury in fact" which is both "concrete and particularized" and "actual or imminent," rather than

"'conjectural' or 'hypothetical;'" (2) the injury is "fairly traceable to the challenged action of the

defendant and not the result of the independent action of some third party not before the court;"

and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a

favorable decision.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations

omitted).  The CWA gives standing to any "person or persons having an interest which is or may

be adversely affected," 33 U.S.C. § 1365(a), (g), and the CWA standing threshold is satisfied

when a litigant meets the requirements for standing under Article III, *see, e.g.*, *Sierra Club v.*

*Virginia Elec. & Power Co.*, 145 F. Supp. 3d 601, 609 (E.D. Va. 2015).

Additionally, defendants move to dismiss Schneider's CWA claims under Federal Rule

of Civil Procedure 12(b)(6).  In reviewing a motion to dismiss under Rule 12(b)(6) for failure to

state a claim, the court "must accept as true all of the factual allegations contained in the

complaint" and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The complaint must allege facts sufficient to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). The court is not required to accept the legal conclusions derived from the facts, and "[a] complaint that provides no more than labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient to meet the pleading standard. *Twombly*, 550 U.S. at 555; *see also Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (stating that the "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)"). Generally, a motion to dismiss for failure to state a claim "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *see also Tobey v. James*, 706 F.3d 379, 387 (4th Cir. 2013). In considering a motion to dismiss under Rule 12(b)(6), a court is generally limited to reviewing the allegations contained in the complaint. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). The court may, however, consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits," a "document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity," *id*. at 166, and "matters of public record," *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997).

## ANALYSIS

Plaintiff Scheider moves for a TRO and preliminary injunctive relief against defendants Donaldson and the County, requesting that the court order Donaldson to stop construction of the funeral home and mortuary on his Clarksville property.  Schneider's complaint alleges three claims against defendant Donaldson under the CWA: discharge of pollutants without an authorizing permit under section 402 (Count I); discharge of dredge or fill material to jurisdictional waters without authorizing permit under section 404 (Count II); and failure to conduct an antidegradation review (Count II).  Additionally, Schneider claims the County has violated the CWA by failing to conduct an antidegradation review (Count IV).  Both defendants move to dismiss all claims against them under the CWA for lack of standing and for failure to state a claim for which relief can be granted.

## I.     Statutory Overview

Congress amended the CWA in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" and with an eye toward "the national goal that the discharge of pollutants into the navigable waters be [e]liminated by 1985."  33 U.S.C. §1251(a); *see also Envtl. Prot. Agency v. California ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 203 (1976).  "The centerpiece of the Clean Water Act is section 301(a)," *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 151 (4th Cir. 2000), which provides that "[e]xcept as in compliance with this section [and other sections] of this title, the discharge of any pollutant by any person shall be unlawful."  33 U.S.C. 1311(a).  The Act provides a few narrow exceptions to section 301's general prohibition; notably, the discharge of pollutants is allowed in accordance with the boundaries of a permit properly issued through the National Pollution Discharge Elimination System ("NPDES").  *See* 33 U.S.C. § 1342.

In order to ensure maximum compliance with the statute's mandate, the CWA sets up a robust regulatory and enforcement scheme that contemplates interlocking but "distinct roles for the Federal and State Government." *PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology*, 511 U.S. 700, 704 (1994).  Section 303 of the Act requires states to set up parallel regulatory systems for their own waterways that are tailored to specific intrastate needs.  *See* 33 U.S.C. § 1311, 1314.  The standards developed by the state provide "a supplementary basis . . . so that numerous point sources, despite individual compliance with effluent limitations, may be further regulated to prevent water quality from falling below acceptable levels." *California ex rel. State Water Res. Control Bd.*, 426 U.S. at 205.  States are required to classify intrastate waterways according to water quality and designated uses and tailor their discharge regulations accordingly.  *See* 33 U.S.C. 1313(c)(2)(A);  *see also PUD No. I*, 511 U.S. at 704.  Section 303 also includes an "antidegradation policy" that requires "state standards be sufficient to maintain existing beneficial uses of navigable waters, preventing their further degradation." *PUD No. 1*, 511 U.S. at 705.  The state must implement its own statewide antidegradation policy that ensures "[e]xisting instream water uses and the level of water quality necessary to protect the existing uses shall be maintained and protected." *Id.* (quoting 40 C.F.R. § 131.12 (1993)).

The statutory scheme allows for NPDES permits to be issued directly by the EPA Administrator or, if a state's water quality regulation program has been approved by the Administrator, the EPA may delegate its permitting authority to the state regulatory body.  *See* 33 U.S.C. § 1342(a), (b); *see also Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., MD*, 268 F.3d 255, 265 (4th Cir. 2001).  Maryland's regulatory scheme and its accompanying antidegradation policy has been approved by the EPA, and MDE retains the authority to issue NPDES permits within the state.  *See Piney Run Pres. Ass'n*, 268 F.3d at 265; *see also* MD. CODE

REGS. 26.08.02.04.  Permits may be issued to pollutant dischargers on an individual basis, *see* 40 C.F.R. § 122.21, or the state may approve a general discharge permit for a specific area under which individual dischargers may apply for coverage, *see* 40 C.F.R. § 122.28.  Requirements for obtaining coverage under either an individual or a general permit for discharge of pollutants vary according to a number of contextual factors, and MDE has established a complex apparatus regulating the issuance and enforcement of discharge permits in the state.  *See generally* MD. CODE REGS. 26.08.04.

The MDE issued an approved GCP that took effect on January 1, 2015.  (*See* ECF No. 1 ¶ 72, Ex. 16).  In accordance with EPA regulations, any entity planning to disturb more than one acre of land during the course of construction must apply for coverage under MDE's GCP before commencing work on a construction project.  (*See id*. at Ex. 16, p. 2, Part (I)(B)(3)(c)); *see also* 40 C.F.R. § 122.26(b)(15)(i).  Parties seeking coverage under the GCP must submit a Notice of Intent ("NOI") in order to obtain approval, (*See id.* at Ex. 16, pp. 5–8, Part (II)), and MDE mandates a stringent review process for all coverage applications and outlines the requirements for continued compliance with permit terms, (*See generally id*. at Ex. 16).  Once a party is granted coverage under the GCP, MDE regularly monitors the party's project to ensure no violations are occurring.  (*See id.* at Ex. 16, Part(IV)(C)).

## II.    Motion for TRO and Preliminary Injunctive Relief against defendants Donaldson and the County

Schneider seeks an TRO and/or a preliminary injunction against defendant Donaldson requiring it to cease all work on his property pending the resolution of these proceedings.  (ECF No. 12, pp. 1–2).  Plaintiff also requests that the court enjoin the building permits issued by the County to Donaldson and require the County to adhere to its responsibilities under the CWA

going forward.  (*Id*. at p. 2).  Donaldson insists that it has in fact obtained coverage under MDE's GCP and is in full compliance with state regulatory requirements and the CWA.  (ECF No. 16, p. 2).  The County contends Schneider has failed to identify any violation of federal law on its part, and as such Schneider is not entitled to a TRO or preliminary injunctive relief.  (ECF No. 17, p. 3).

In order to demonstrate that he is entitled to a TRO and preliminary injunctive relief against defendants, Schneider must establish a likelihood of success on the merits of his claim, a likelihood of irreparable harm in the absence of relief, that the balance of equities weighs in his favor, and that an injunction is in the public interest.  *See Winter*, 555 U.S. at 20.  Again, preliminary injunctive relief is considered an extreme remedy, and plaintiff carries a heavy burden of persuasion.  *See Mazurek v. Armstrong*, 520 U.S. at 972.  Schneider's claims against Donaldson and the County all depend on the veracity of his allegation that Donaldson is discharging material into the Tributary in the absence of a valid permit from MDE.  Since Donaldson has been covered under MDE's GCP since April 19, 2016, (ECF No. 16, Ex. A), there does not appear to be any ongoing noncompliance with the CWA on the part of either defendant.  Plaintiff therefore lacks standing to sue defendants and he has failed to demonstrate that he is likely to succeed on the merits of his claims.[1]

### III.    Defendants' Motions to Dismiss

Donaldson and the County move to dismiss the claims against them under Rule 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim.  For the reasons elaborated below, Schneider lacks standing to sue both defendant Donaldson and the County.  Furthermore,

---

[1] Plaintiff's lack of standing to sue both defendants and the deficiencies in his CWA claims are examined in detail in the discussion of defendants' motions to dismiss in Section II.

Schneider fails to state a cognizable claim against either Donaldson or the County under the CWA.

    a.   *CWA claims against defendant Donaldson*

As a threshold matter, Schneider appears to lack standing to sue defendant Donaldson. The CWA provides citizens with a right of action "against any person . . . who is alleged to be in violation of [] an effluent standard or limitation," 33 U.S.C. § 1365(a)(1)(A), and a citizen will have standing under the citizen suit provision if the traditional Article III requirements are satisfied, *see Virginia Elec. & Power Co.*, 145 F. Supp. 3d at 609. Standing requires the plaintiff to demonstrate injury in fact that is fairly traceable to actions of the defendant and is likely to be redressed by a favorable decision on the part of the court. *Defenders of Wildlife*, 504 U.S. at 560.[2] The Supreme Court has held, however, that "citizens lack statutory standing under § 505(a) to sue for violations that have ceased by the time the complaint is filed." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 175 (2000) (citing *Gwaltney of*

[2] While Schneider fails to sufficiently demonstrate an ongoing violation as required for standing under Section 505, the court notes that he has successfully demonstrated the requirements for Article III standing. With respect to the injury requirement, the Supreme Court has stated that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 183 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972). Schneider has alleged in his complaint that Donaldson is discharging pollutants into a stream that abuts his property, that plaintiff regularly enjoys the area behind his lot where the stream flows, and that plaintiff derives aesthetic benefit from the presence of the stream. (*See, e.g.*, ECF No. 1, Ex. 5, p. 2). Having identified a specific and personalized grievance, Schneider has alleged sufficient injury in fact to establish standing with respect to defendant Donaldson. Furthermore, the alleged injury is certainly "fairly traceable to the challenged action of the defendant." *Defenders of Wildlife*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976))). Schneider claims his injury is caused by the discharge of pollutants into the Tributary and that Donaldson's construction of the mortuary upstream is the direct cause of the offensive discharge. (*see, e.g.*, ECF No. 1. ¶¶ 85–95). The CWA authorizes federal courts to issue injunctions and impose civil penalties in the event that they determine an individual or entity has violated the Act, *see* 33 U.S.C. § 1365(a), and therefore a favorable decision by this court is likely to redress the alleged harm.

*Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 56–63 (1987)).  While

Schneider may have established Donaldson's original noncompliance with CWA requirements in

his complaint, Donaldson has demonstrated both that it is currently covered under MDE's GCP

as required by the federal and state regulatory regime and that it is apparently in compliance with

the terms of the permit.

Schneider asserts three claims against Donaldson under the CWA alleging three separate

violations of the Act: (1) discharge of pollutants into the Tributary without an authorizing permit

under Section 402; (2) discharge of dredge or fill material to jurisdictional waters without an

authorizing permit under Section 404; and (3) failure to conduct an antidegradation review.

(ECF No. 1, pp. 16–19).  Schneider is correct that Donaldson originally failed to obtain the

necessary discharge permit from MDE in order to commence construction.  (see ECF No. 14, Ex.

A).  Indeed, MDE made note of Donaldson's noncompliance during an April 4, 2016 inspection

of the property, when it also determined that the wetlands present on the property were well

outside the area of disturbance contemplated by the mortuary project.  (*Id*.).  Donaldson,

however, did eventually apply for and retain coverage under MDE's validly issued GCP on April

19, 2016.  (*see* ECF No. 14, Ex. C).  Furthermore, when MDE conducted a site visit on

Donaldson's property on May 6, 2016, the inspection revealed no apparent violations of relevant

environmental regulations.  (*Id*. at Ex. D).  Donaldson appears to be in full compliance with the

regulatory requirements imposed by MDE, and therefore Schneider's allegations are insufficient

to establish any current or ongoing violations on the part of the defendant.

Even if Schneider was able to establish standing to sue under the CWA, it is clear from

the allegations in the complaint that the alleged CWA violations in Schneider's complaint are

merely collateral attacks on MDE permitting decisions masquerading as federal statutory claims

under the CWA.  The Fourth Circuit has stated that when a lawsuit is "at root a collateral attack"

alleging "essentially technical violations in the EPA permitting process," the suit is inappropriate

for resolution by the federal district court.  *Palumbo v. Waste Tech. Indus.*, 789 F.2d 156, 160

(4th Cir. 1993); *see also Sugarloaf Citizens Ass'n v. Montgomery Cty., Md.*, 33 F.3d 52 (4th Cir.

1994).  As another court in this circuit explained, "[a] citizen suit alleging a violation of a valid

permit is a separate at distinct action from one that challenges the very validity of the permit."

*Sierra Club v. Virginia Elec. & Power Co.*, 145 F. Supp. 3d 601, 606 (E.D. Va. 2015).  While a

citizen can bring a claim under the CWA alleging a violation of a duly issued discharge permit, a

challenge to the underlying validity of an existing permit "constitutes an impermissible collateral

attack."  *Id.*; *see also Ohio Valley Envtl. Coal, Inc. v. Apogee Coal, LLC*, 531 F. Supp. 2d 747,

759 (S.D.W. Va. 2008).  Schneider does not, as Donaldson points out, allege in his complaint

that Donaldson is violating a valid permit already issued by the MDE or the terms of defendant's

coverage under the GCP.  (*See* ECF No. 1 ¶¶ 82, 88; ECF No. 22, p. 8).  Such an allegation

would, presumably, sustain a claim for violation of the CWA.  *See Sierra Club*, 145 F. Supp. 3d

at 608.  Instead, however, Schneider's complaint alleges Donaldson is discharging materials

without a valid permit and that the defendant failed to comply with the procedural requirement to

conduct an antidegradation review prior to seeking a permit from MDE.  (*See id.* at pp. 16–19).[3]

Apparently realizing after Donaldson's filing in response to his motion for a TRO that

Donaldson did in fact have coverage under the GCP, Schneider attempts to reformulate his

objection as a challenge to the process through which Donaldson was able to gain approval from

the MDE.  (*See* ECF No. 21, p. 2).  This reformulation "is simply [an] expression of displeasure

---

[3] It is worth noting that the regulation regarding Tier II antidegradation review contains
conditional language suggesting that such a review is not required in all circumstances.  *See* MD.
CODE REGS. 26.08.02.04-1.  MDE is appropriately the regulatory body that determines whether
antidegradation review is necessary or required.

with the alleged inadequacies of [MDE] review," *Sugarloaf Citizens Ass'n*, 33 F.3d 52 (quoting

*Palumbo*, 989 F.2d at 160), and "constitutes an impermissible collateral attack," *Sierra Club*, 145

F. Supp. 3d at 606.  Federal courts are inappropriate forums in which to resolve challenges to a

state's permitting decisions, *see id.* at 608, and this case appears to be an appropriate

circumstance for this court to abstain from asserting jurisdiction under *Buford .v Sun Oil, Co.*,

319 U.S. 315 (1943).[4]  Maryland provides the plaintiff with an adequate venue in which to air his

grievances with MDE's permitting decision and an opportunity for review of his objections.  *See,

e.g.*, MD. CODE ANN., Environment § 1–601 (West 2016).  Schneider's collateral attack on

MDE's issuance of GCP coverage to Donaldson is inappropriate for resolution by this court, and

his objections should be brought according to the review procedures set up by the state.

    b.  *CWA claim against the County*

    The facts alleged in Schneider's complaint fail to sufficiently demonstrate he has

standing to sue the County under the CWA.  The CWA allows citizens to bring suit to enforce an

environmental standard or limitation against an individual or entity alleged to be in violation of

---

[4] The Supreme Court has held that federal courts should abstain from exercising jurisdiction over cases which primarily concern complex issues of state law when timely and adequate state court review is available to the plaintiff.  *See Buford*, 319 U.S. at 333.  So-called "*Buford* abstention" is appropriate with respect to orders of state administrative agencies when: (1) there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989).  The Fourth Circuit has recognized the appropriateness of *Buford* abstention in cases involving collateral attacks on state permitting decisions.  *See, e.g.*, *Palumbo*, 789 F.2d at 160 (mandating *Buford* abstention in a citizen suit under RCRA involving a challenge to the Ohio EPA's issuance of a hazardous waste permit); *Sugarloaf Citizens Ass'n*, 33 F.3d 52 (upholding the district court's application of *Buford* abstention in a citizen suit under CAA and RCRA alleging error in the MDE permit issuing process); *see also Sierra Club*, 145 F. Supp. 3d at 606 (acknowledging the suitability of *Buford* abstention in cases involving collateral attacks on state permitting decisions brought in federal court under the guise of alleged CWA violations).

the Act.  33 U.S.C. § 1365(a)(1)(A).  Again, standing under the CWA requires the plaintiff to establish injury in fact that is fairly traceable to the actions of the defendant and is likely to be redressed by a favorable judicial resolution.  *Defenders of Wildlife*, 504 U.S. at 560.  While Schneider does allege a concrete and specific injury - the alleged degradation of the Tributary adjacent to his property - he does not sufficiently demonstrate that the injury can be traced directly to the actions of the County.  Furthermore, even if Schneider can show a tenuous connection between the County's actions and his injury, he does not show that a favorable decision by this court is likely to redress his grievances.

The core of Schneider's claim against the County, though not entirely clear from the facts alleged in the complaint, is that the County violated the CWA by issuing Donaldson a building permit prior to conducting an antidegradation review as outlined in the state water regulations. (ECF No. 1 ¶ 120).  In support of his claim, Schneider points to the state's antidegradation policy implementation procedures in the Code of Maryland Regulations, which imposes certain obligations on entities applying for certain types of discharge permits.  MD. CODE REGS. 26.08.02.04-1.  These antidegradation regulations, however, clearly impose obligations specifically on permit applicants and MDE.  They make no mention whatsoever of the responsibilities of local zoning boards in issuing basic building permits.  *See id*.  Even if, as Schneider alleges, it was improper for the County to award Donaldson a building permit prior to Donaldson receiving pollution discharge coverage under the GCP from MDE, this potential procedural violation ceased when Donaldson obtained GCP coverage on April 19, 2016. Schneider's objection, therefore, is more appropriately aimed at MDE and its permit processes

than at the County.[5]  The alleged injury to the Tributary, which Schneider claims is the result of

Donaldson's discharge of material from the construction site, is traceable to the actions of

Donaldson in commencing the construction and to MDE for allowing Donaldson coverage under

the GCP.  Perhaps the County's issuance of a Commercial Building Permit is proximately related

to the discharge of pollutants from Donaldson's property, but the connection is tenuous at best.

Furthermore, the court is not in a position to order the abeyance of a local building permit which

appears to have been validly issued and subjected to thorough review processes when the alleged

issue - Donaldson's failure to obtain a discharge permit from MDE - has since been remedied.

Schneider's claim against the County is simply not one for which the court can assign an

appropriate remedy.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a TRO and preliminary injunctive relief

is denied.  Defendant Donaldson's motion to dismiss Counts I–III is granted.  The County's

motion to dismiss Count IV is granted.  A separate order follows.


_____January 6, 2017_____                    _____/s/_____
Date                                             J. Frederick Motz
                                                 United States District Judge


---

[5] As explained in Section III(a) *supra*, Schneider's issues with MDE permit processes are
inappropriate for resolution by this court.